# In the United States Court of Federal Claims

No. 12-482L

(Filed: October 10, 2018)

| | |
|---|---|
| KENNETH COURVAL, et al., **For himself and As Representative of a Class of Similarly Situated Persons,** **Plaintiffs,** v. **UNITED STATES,** **Defendant.** | Rails-to-trails takings case; class action; settlement; fairness hearing; RCFC 23(e) |

J. Robert Sears, Baker Sterchi Cowden & Rice, L.L.C., St. Louis, Missouri.  With him on the proposed settlement was Steven M. Wald and Michael J. Smith, Stewart Wald & McCulley, LLC, St. Louis, Missouri.

Ragu-Jara Gregg, Trial Attorney, Law and Policy Section, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant. With him on the proposed settlement was Jeffrey H. Wood, Acting Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Senior Judge.

Pending before the court in this rails-to-trails class action is the parties' proffered Settlement Agreement, which has been the subject of notice to class members and a fairness hearing regarding its terms.  This Agreement represents the resolution of claims by a class comprised of 41 members that the federal government, acting under the National Trails System Act Amendments of 1983 ("Trails Act"), Pub. L. No. 98-11, § 208, 97 Stat. 42, 48 (codified at 16 U.S.C. § 1247(d)), took their property without just compensation in contravention of the Takings Clause of the Fifth Amendment of the United States Constitution.  *See* Second Am. Compl. ¶ 2, ECF No. 16; Hr'g Tr. 4:8-22 (Sept. 28, 2018).[1]  The court previously granted the parties' Joint Motion for Preliminary Approval of the Settlement and to Approve Notice to the Class Members Regarding Proposed Class Settlement and Request to Set Date for Public Hearing under RCFC 23(e) ("Joint Motion") at 2, ECF No. 75, and authorized issuance of a notice of settlement to the class members, *see* Order of Aug. 14, 2018 (granting the Joint Motion

---

[1]The date will be omitted from further citations to the transcript of the fairness hearing.

and directing issuance of notice to class members) ("Order for Notice"), ECF No. 77.  Following notice to the class and receipt of class members' responses, a hearing on the fairness of the Settlement Agreement was held at the Charles A. Halleck Federal Building in Lafayette, Indiana on September 28, 2018.  For the following reasons, the court approves the settlement negotiated by the parties.

## BACKGROUND

### A. The Takings Claim

This rails-to-trails case originally began in July 2012, when plaintiffs filed their first complaint with this court.  *See generally* Compl.  The complaint was based on the conversion of a railroad corridor in Howard County, Indiana to a recreational trail under the Trails Act, 16 U.S.C. § 1247(d).  Second Am. Compl. ¶¶ 2-6.  The land at issue spans 2.35 miles (not continuous) between mileposts 55.66 and 58.5 in Howard County (the "Railroad Line").  *Id.* ¶ 3.  The Central Railroad Company of Indianapolis ("the Railroad") previously held a right-of-way easement over the Railroad Line for railroad purposes.  Joint Mot. at 2.  On June 15, 2012, the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use ("NITU") over the Railroad Line.  Second Am. Compl. ¶ 20.  The class members are 41 landowners who own 49 parcels of land burdened by the railroad easement and who allege they would have enjoyed exclusive right of physical ownership of the land at issue if not for the issuance of the NITU.  Second Am. Compl. ¶¶ 21-22 & Ex. A.  They allege a taking of their property by the United States government and pray for just compensation as relief.  Second Am. Compl. ¶ 21-22.  All of the land at issue is within the city limits of Kokomo, Indiana.  *See* Second Am. Compl. Ex. A; Hr'g Tr. 7:20 to 8:4.[2]

The properties at issue are mostly residential in nature, but a handful are industrial, commercial, and agricultural.  *See* Joint Mot. at 3.  Members of the class allege they were fee simple owners of the properties at issue at the time of the taking and that, under Indiana law, "the scope of the railroad purpose easement[s] w[ere] exceeded when [the Railroad] ceased using the corridor for its railroad operations and transferred its interest in the corridor for railbanking and interim trail use under [the Trails Act]."  *Id.* at 2.  They seek compensation under the Takings Clause, the Trails Act, the Tucker Act, 28 U.S.C. § 1491(a), and the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c).  Second Am. Compl. ¶ 2.

At the outset of this litigation, the plaintiffs asserted they brought the action "for themselves and as the Representatives of a Class of Similarly Situated Persons."  Joint Mot. at 2.

---

[2]The City of Kokomo was named after a member of the Miami Tribe of Indians who was resident in that area of Indiana at the turn of the nineteenth century.  A number of legends arose about Ma-ko-ko-mo, who may, or may not, have been a chief of the Miami.  In all events, besides the city in Indiana, other places in the United States and elsewhere were named after the near-mythical person.

The erstwhile chief should not to be confused with the eponymous Kokomo made famous by the Beach Boys in 1988.  But, much like the lyrics of their song implore, this litigation did "take it slow."

They subsequently moved to certify the case as an opt-in class action pursuant to Rule 23 of the Rules of the Court of Federal Claims ("RCFC").  Second Am. Compl. ¶¶ 26-32.  The government did not oppose the class motion and the class was certified on March 1, 2013.  *See* Order Approving Plan for Notice to Class, ECF No. 12-2.  Following two amendments to the Complaint, ECF Nos. 4, 16, the parties commenced discovery, and an appraiser was jointly retained by the parties[3] to determine the values of the property at issue.  Joint Mot. at 2; Joint Status Report (Jan. 20, 2015), ECF No. 27.[4]  The appraiser had particular expertise in the valuation of residential properties, including easements, and possessed MAI credentials.  Hr'g Tr. 5:18-22, 11:7-21.  To organize the valuation process, the parties selected twelve representative properties for the appraiser to examine.  *See* Joint Status Report (Feb. 22, 2016), ECF No. 38.  The parties chose this approach due to the significant similarities in size and location between some of the properties.  *See* Hr'g Tr. 6:4-10, 6:18-7:19.  After delays, by the end of 2015, the parties were in possession of all twelve reports prepared by the joint appraiser. *See* Joint Status Report (Nov. 24, 2015), ECF No. 32.  Following the receipt of these reports from the joint appraiser, the parties' settlement discussions primarily focused on resolving "their respective questions and concerns regarding the joint appraiser's work product."  Joint Status Report (Aug. 22, 2016), ECF No. 44.

These negotiations dragged on for more than two years due to perhaps one of the most bizarre aspects of this litigation – the case of the missing appraiser.  After filing his report on the twelve representative properties, the joint appraiser vanished.  *See* Joint Status Report (June 21, 2017), ECF No. 53; Hr'g Tr. 29:25-30:12.  Despite significant efforts by both parties to locate the missing appraiser, he could not be found.  Hr'g Tr. 29:25-30:23.  The parties were thus required to "go forward without further input from the missing joint appraiser."  Joint Status Report (June 21, 2017); *see also* Hr'g Tr. 30:14-31:3.

Notwithstanding this obstacle, the parties were able to work through their differences and reach a tentative settlement on July 30, 2018.  *See generally* Joint Mot. at 1-3.  The tentative settlement provided for the United Sates to pay a total sum of $422,123.81, consisting of $150,000 for the land values, $41,157.81 of delay damage interest through September 27, 2018, and statutory attorneys' fees and costs of $230,966.  *Id.* at 3-4.  Additional interest of $19.78 per day would apply for each day beyond September 27, 2018.  *Id.* at 5.

The parties then filed their Joint Motion seeking preliminary approval of the settlement and for notice to class members.  *See* Joint Mot.  After a hearing on August 14, 2018, the court granted the Joint Motion.  *See* Order for Notice.  Notice was subsequently mailed to class members on August 24, 2018, with a deadline of September 18, 2018 for responses.  *Id.*  The court also scheduled a fairness hearing for September 28, 2018 in Lafayette, Indiana.  *Id.*

---

[3]The appraiser was Don McKee of McKee Enterprises, Inc. in Indianapolis, Indiana. Joint Mot. at 2.  The star-crossed Mr. McKee would later play a pivotal role in the duration of this litigation.  *See infra*.

[4]The parties also used a claims book process to determine the nature of the pertinent property interests.  *See* Joint Mot. at 2.

**B.  Notice to Class Members and the Fairness Hearing**

Class counsel filed a Notice of Class Members' Responses to Class Action Settlement Notice ("Settlement Notice") on September 25, 2018, ECF No. 78.  In the Settlement Notice, class counsel represented they received "30 responses on 29 of the 41 claims" and that none of the responding class members indicated they objected to the proposed settlement or that they intended to attend the fairness hearing, either in person or by telephone.  *Id.* at 1.  In sum, over 70 percent of the responding class members affirmatively expressed their approval of the Settlement Agreement.  *Id.* Ex. 1; Hr'g Tr. 14:19-23.

A fairness hearing was held on September 28, 2018, at the Charles A. Halleck Federal Building in Lafayette, Indiana.  No class member attended the fairness hearing, either in person or by telephone.  *See* Hr'g Tr. 38:13-15.  At the hearing, the court heard from both counsel for the class and for the government regarding the process of reaching the settlement.  Hr'g Tr. 9:1-10, 13:22-14:14, 32:9-33:2.  Counsel for the class and for the government detailed the process of arriving upon an agreed value for each of the properties on an individual basis, the method of distribution of the settlement funds, and why the amounts are fair and reasonable for each property owner and for the entire class.  *See* Hr'g Tr. 9:1-10, 13:22-14:14, 32:9-33:2; 38:7-11.

At the hearing, the court specifically inquired into the response by class member Ms. Jacqueline S. Bird, who, despite checking the box indicating she approved of the proposed settlement, stated that she "disapprove[d] it" as she "fe[lt] that the amount for damages wasn't enough!"  Settlement Notice Ex. 2, at 1-3.  The basis for her disapproval, as she stated it, was that, "after the crew [that was hired to do the conversion of the Railroad Line to a trail] finished their work, they left a big mess on my back property, which included: [p]aper products and bottles, and miscellaneous wood debris, for several months!"  *Id.* at 3.  While this problem lingered for a time, the City of Kokomo removed the offending debris approximately "2 months" after Ms. Bird "notified the [a]ttorneys in this case."  *Id.*[5]

In the Settlement Notice, class counsel addressed Ms. Bird's comment as follows: "whether the local entity that acquired the rights to the easement is a good steward of the property or fails in that duty is an issue separate and apart from these proceedings.  The resolution of any such issue is between the fee owner and the easement holder.  It is not an issue that can be resolved by this Court, Class Counsel, nor the Defendant in this matter."  Settlement Notice at 2.  At the hearing, class counsel noted that although Ms. Bird made a comment expressing a limited disapprobation, she both checked the approval box and provided her social security number, a prerequisite to payment – indicating she expected to be paid her share of the settlement.  Hr'g Tr. 15:6-8, 27:5-7.  Further, Ms. Bird indicated she did not wish to attend the fairness hearing and subsequently did not attend the fairness hearing.  *See generally* Hr'g Tr. 1:1-25, 38:12-15; *see also* Settlement Notice Ex. 2, at 2-3.

The court also inquired into the response by class member Brothers & Sisters LLC 1/2 Int & Jack W. & Gretchen E. Harrison Rev. Trust Agr. 1/2 Int. ("the Trust"), signed by Gretchen E. Harrison.  Settlement Notice, Ex. 1, at 21-22.  Although Ms. Harrison, acting as representative for the Trust, did not indicate an interest in attending the hearing nor did she provide any

---

[5]The City of Kokomo is the trail operator.  Hr'g Tr. 21:22-23.

comments, she did not check the "approve" box on the consent form.  *Id*.[6]  At the hearing, the court heard from class counsel about the ownership of the properties held by the Brothers & Sisters LLC and the Trust.  Hr'g Tr. 16:19-17:15.  The representative of Brothers & Sisters LLC had indicated approval of the proposed settlement.  *See* Settlement Notice Ex. 1, at 1.  Class counsel also noted at the hearing that Ms. Harrison, like Ms. Bird, provided the tax identification number for the Trust and her personal social security number – indicating she and the Trust expected to be paid from the settlement fund.  Hr'g Tr. 18:16-23.

### C.  The Terms of the Settlement Agreement

The Settlement Agreement sets out the specific amounts the government has agreed to pay to the class.  The sum of $150,000 will be paid to the class members, apportioned to each class member depending on the size and type of property.  Joint Mot. at 4-5 & Ex. B, at 1; Hr'g Tr. 5:18 to 8:10.  As noted previously, counsel for the class and for the government negotiated the amount for each property individually, starting with the jointly retained appraiser's valuations.  Hr'g Tr. 9:12-24.  The compensation amount is coupled with an additional $41,157.81 of interest for delay damages through September 27, 2018, distributed on the basis of each class members' principal amount.  Joint Mot. at 4-5; Hr'g Tr. 12:14-25.  The government has also agreed to pay "statutory [attorneys'] fees and costs" of $230,966, Joint Mot. at 4,[7] for a total payment of $422,123.81 through September 27, 2018, *id.*  An additional $19.78 per day of interest is payable from the date of September 27, 2018 until judgment is actually paid.  *Id.* at 5.  Upon approval by the court, the settlement will be submitted by the United States to the Department of Treasury for payment.  Hr'g Tr. 27:19 to 28:24.

### ANALYSIS

The approval of settlement agreements in certified class actions is governed by RCFC 23(e), and attorneys' fees and costs awards are governed by Rule 23(h).  Rule 23(e) provides that, "[t]he claims . . . of a certified class may be settled . . . only with the court's approval," and sets out the requirements for such approval.  RCFC 23(e).  The touchstone is whether the parties' proposed settlement is "fair, reasonable, and adequate."  Rule 23(e)(2).

### A.  Approval of the Settlement Agreement

Rule 23(e) prescribes the procedures that must be followed and requirements that must be satisfied for approval of a class settlement:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

---

[6]Ms. Harrison also did not check the box indicating she was opposed to the settlement. *See* Settlement Notice Ex. 1, at 21-22.

[7]This amount consists of $219,052 in fees, and $11,914 in costs.  *See* Joint Mot. at 4.

(4) [Not used.]
(5) Any class member may object to the proposal if it requires
    court approval under this subdivision (e); the objection may be
    withdrawn only with the court's approval.

RCFC 23(e)(1)-(5).[8]

In accord with Rule 23(e)(1), the court directed that notice be sent to the members of the class regarding the terms of the proposed settlement. *See* Order for Notice.[9]  The notice that was sent to the class members informed them of their right to object to the proposal under Rule 23(e)(5), and a fairness hearing was held to determine if the settlement agreement should be approved. *See* Order for Notice; *see generally* Hr'g Tr.

The remaining requirement that must be met for the parties' Settlement Agreement to be approved is that the court must find the parties' proposal "fair, reasonable, and adequate." RCFC 23(e)(2).  In making this determination, the court looks to the "paramount" twin elements of procedural and substantive fairness. *See Christensen v. United States*, 65 Fed. Cl. 625, 629 (2005) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73-74 (2d Cir. 1982) (Friendly, J.)) ("Determination whether a proposed class action settlement is fair, reasonable, and adequate involves consideration of two types of evidence.  The primary concern is with the substantive terms of the settlement . . . [and,] to supplement the . . . necessarily limited examination of the settlement's substantive terms, attention also has been paid to the negotiating process by which the settlement was reached.") (citation omitted).

Procedural fairness is concerned with "whether the settlement resulted from 'arms-length negotiations and whether plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Christensen*, 65 Fed. Cl. at 629 (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)) (internal alterations omitted).

Substantive fairness is concerned with whether the terms of the settlement are "fair, reasonable, and adequate," RCFC 23(e)(2), an evaluation which looks to a number of possible factors.  While Rule 23 does not provide a definitive list of such factors to be applied in determining whether a settlement negotiated by the parties is substantively fair, courts have considered the following matters:

(1) The relative strengths of plaintiffs' case in comparison to the
    proposed settlement, which necessarily takes into account:
    (a) [t]he complexity, expense and likely duration of the
        litigation;
    (b) the risks of establishing liability;

---

[8]RCFC 23 is substantially similar to its corresponding provision of the Fed. R. Civ. P., and decisions applying Fed. R. Civ. P. 23 are persuasive in this court. *See Haggart v. United States*, 89 Fed. Cl. 523, 529 (2009) (citing *Barnes v. United States*, 68 Fed. Cl. 492, 494 n.1 (2005)).

[9]The parties have not "identif[ied] any agreement made in connection with the proposal." RCFC 23(e)(3); *see generally* Joint Mot.

(c) the risks of establishing damages;

(d) the risks of maintaining the class action through trial;

(e) the reasonableness of the settlement fund in light of the best possible recovery;

(f) the reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation;

(g) the stage of the proceedings and the amount of discovery completed; [and]

(h) the risks of maintaining the class action through trial;

(2) The recommendation of the counsel for the class regarding the proposed settlement, taking into account the adequacy of class counsels' representation of the class;

(3) The reaction of the class members to the proposed settlement, taking into account the adequacy of notice to the class members of the settlement terms;

(4) The fairness of the settlement to the entire class; [and]

(5) The fairness of the provision for attorney fees . . . .

*Dauphin Island Prop. Owners Ass'n v. United States*, 90 Fed. Cl. 95, 102-103 (2009) (collecting cases). A further consideration in reviewing the fairness of the parties' proposed settlement is "the interest in encouraging settlements, particularly in class actions, which are often complex, drawn out proceedings demanding a large share of finite judicial resources." *Christensen*, 65 Fed. Cl. at 629 (citing *Mayfield v. Barr*, 985 F.3d 1090, 1092 (D.C. Cir. 1993)).

The court concludes the settlement in this case is both procedurally and substantively fair. The parties' negotiations were supported by reports from an independent appraiser. *See* Joint Mot. During the settlement process, the parties filed numerous joint status reports apprising the court of the parties' progress towards settlement. *See, e.g.*, ECF Nos. 47, 49, 51, 53, 55, 58, 60, 62, 65. The principle hurdle in case was a set of disagreements over the valuations put forward by the jointly appointed appraiser. *See, e.g.*, ECF Nos. 49, 51. The parties showed admirable determination in their efforts to both locate the vanishing appraiser and to continue negotiations without him. *See* Hr'g Tr. 31:4 to 33:18; *see also* ECF Nos. 53, 55, 58. The parties' ability to reach a compromise instead of resorting to a resumption of the appraisal process likely substantially shortened the length of this litigation and lowered its overall cost. The court is satisfied that the ensuing negotiation was conducted in good faith, without collusion, and with an interest in ultimately resolving the case by settlement.

Further, the court finds the class counsel acted as zealous advocates for the class members throughout the course of this litigation. The Joint Notice sent to class members provided a detailed explanation on how their individual settlement amount was calculated, the appraisal process, their rights to object to the settlement, and the amount of attorneys' fees and costs, and a website was provided setting out further relevant information. *See* Joint Mot. Ex. B. Class counsel also continued to prosecute the case despite the lengthy, and at times arduous, nature of the settlement process. Overall, the court is satisfied that the negotiations that produced the Settlement Agreement "resulted from an arm's-lengths negotiations and that plaintiffs' counsel [] possessed the experience and the ability, and have engaged in the discovery, necessary to effective representation of the class's interest." *D'Amato*, 236 F.3d at 85 (internal citations omitted).

The court also concludes the terms of the Settlement Agreement are substantively fair. Substantive fairness requires the court to consider the balance of the likely costs and rewards of further litigation. The joint appraiser conducted an independent appraisal of representative properties that, despite some disagreements, was sufficient to support settlement negotiations without his presence. *See* Joint Mot. at 3. In reaching their agreed conclusion, the two parties "reviewed the appraisal reports, asked numerous questions of the appraiser [during the time he remained available], participated in a significant and lengthy negotiation period, and ultimately reached a compromise agreement that includes the value of land taken for all of the parcels." Joint Mot. at 3. Class counsel, after "review[ing] the terms of the proposed settlement [] submits that the settlement is a 'fair, reasonable, and adequate' resolution of the claims asserted by the [c]lass." *Id.* at 5; *see also, e.g., Raulerson v. United States*, 108 Fed. Cl. 675, 678 (2013) ("[T]he professional judgment of plaintiff's counsel is entitled to considerable weight in the court's determination of the overall adequacy of the settlement.") (citing *Dauphin*, 90 Fed. Cl. at 104 (quoting *National Treasury Emps. Union v. United States*, 54 Fed. Cl. 791, 797 (2002))). The government has also "determined that the proposed settlement is in the best interests of the United States." Joint Mot. at 5. Both parties agree that the "arms-length negotiations were conducted in a manner that gave no special preference to one [c]lass [m]ember over any other." *Id.* Prolonged litigation would likely only increase costs (in attorneys' fees, litigation expenses, the cost of additional appraisers, and extended interest) without providing any significant additional benefit.

The fact that the members of the settlement class have overwhelmingly approved the terms of the proposed Settlement Agreement, *see generally* Settlement Notice; Hr'g Tr. 15:1-12, with only one ambiguous comment, that by Ms. Bird, which addressed an issue unrelated to the settlement, is instructive.

The court is satisfied with class counsel's responses to Ms. Bird's concerns. Settlement Notice at 2; Hr'g Tr. 27:5-7, 35:9-22. As stated in the Settlement Notice, "whether the local entity that acquired the rights to the easement is a good steward of the property or fails in that duty is an issue separate and apart from these proceedings. The resolution of any such issue is between the fee owner and the easement holder." Settlement Notice at 2.

The court is also satisfied with the question arising regarding the incomplete response from the representative of the Jack W. and Gretchen Harrison Revocable Trust. The Trust owns a one-half undivided interest in four properties covered by the Settlement Agreement. Hr'g Tr. 17:1-5, 18:24-19:8. Unlike Ms. Bird, Ms. Harrison on behalf of the Trust did not provide any comments relating to the settlement, nor did she choose to attend the hearing, either in person or by telephone. *See generally id.* As class counsel noted at the hearing, like Ms. Bird, Ms. Harrison provided the tax identification number for the Trust along with her social security number – indicating an expectation of payment from the settlement fund. Hr'g Tr. 18:16-19. The court, therefore, concludes that Ms. Harrison and the Trust expect approval of the settlement and payment of the pertinent amount.

The court also determines the settlement is fair to the class as a whole. The settlement amount, allocated based on each class member's individual property interest, adequately and fairly represents the strength and magnitude of each class member's claims. A settlement is fair when it is "'uniformly available' to the entire class while also [being] 'tailored to distinct groups within the class.'" *Bailey v. United States*, 128 Fed. Cl. 550, 555 (2016) (citing *Berkley v. United States*, 59 Fed. Cl. 675, 711 (2004)). The parties jointly retained an appraiser to produce

valuation reports for purposes of informing settlement negotiations, and the amounts reported as just compensation in the Settlement Agreement are allocated based on each class member's actual property interest.  *See* Joint Mot. Ex. B, at 1; Hr'g Tr. 31:14 to 34:22.

The Settlement Agreement negotiated by the parties would also provide members of the class with a certain and definite resolution of this case by avoiding further proceedings—and the attendant uncertainty—of resolving this case by trial.  *See Sabo v. United States*, 102 Fed. Cl. 619, 627 (2011).  This litigation is already over half a decade old – any further delays would operate to the detriment of the class members.

## B.  Approval of Attorneys' Fees and Costs

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." RCFC 23(h).  The inquiry in this vein is whether agreed amount of fees and costs is a reasonable approximation of the amount due under the statute.  *Raulerson*, 108 Fed. Cl. at 678-79.  In that respect, the court finds that the $230,966 in attorneys' fees and costs provided in the Settlement Agreement pursuant to the Uniform Relocation Act is fair.  This amount includes $219,052.00 in attorneys' fees, and $11,914 in costs.  *See* Joint Mot. at 4.  Class counsel ushered this case through a multi-year negotiation (including a significant delay due to the appraiser's disappearance), the arm's-length settlement process resulted in a jointly agreed amount for fees and costs between class counsel and counsel for the government, and the amounts agreed under the Uniform Relocation Act were disclosed to the class members and no objections were recorded.  The court thus approves the Settlement Agreement's provision for $230,966 in attorneys' fees and costs.

## CONCLUSION

For the foregoing reasons, the parties' motion for approval of the Settlement Agreement is GRANTED.  The clerk is directed to enter judgment in the total amount of $422,123.81, consisting of $150,000 in principal and $41,157.81 in interest through September 27, 2018 for prevailing class members, and $219,052 in attorneys' fees and $11,914 in litigation costs awarded to class counsel pursuant to the Uniform Relocation Act.  After September 27, 2018, interest shall accrue at a rate of $19.78 per day through the date of payment by the Department of the Treasury.  The judgment is payable to class counsel for distribution to class according to the terms of this opinion and order and the Settlement Agreement.

The clerk shall enter judgment in accord with this disposition.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge